UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Gabriel Carpenter,

              Plaintiff,

    vs.                         REPORT AND RECOMMENDATION

City of St. Cloud and
Thomas Schlieman,

              Defendants.      Civ. No. 98-1567 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

At Duluth, in the District of Minnesota, this _26th_ day of May, 2000.

## I.   Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion for an award of reasonable costs and attorneys' fees, following the parties' settlement of this action.

A Hearing on the Motion was conducted on February 8, 2000, at which time, the Plaintiff appeared by George E. Atrim, Esq., and the Defendants appeared by Joseph B. Marshall, Esq.

For reasons which follow we recommend that the Plaintiff's Motion be granted, and that the Plaintiff be awarded fees in the amount of $10,500.00, and costs in the amount of $335.00.

FILED **MAY 2 6 2000**
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD _____
DEPUTY CLERK _____

II.  <u>Factual and Procedural Background</u>

On June 22, 1998, the Plaintiff commenced this action, under Title 42 U.S.C. §1983, alleging that the Defendants had denied him his right to due process, as guaranteed by the Constitution of the United States.  As recounted by the Plaintiff, this case arises out of an incident which occurred on August 12, 1996, in St. Cloud, Minnesota.  See, <u>Plaintiff's Memorandum in Support of Motion for an Award of Costs and Attorney's Fees</u>, at 2.  On that date, a woman, who resided in a townhouse adjacent to the Plaintiff's residence, called the police because she heard the Plaintiff and his brothers arguing.  <u>Id.</u>  Apparently, she also claimed to have seen one of the brothers chasing the other with a knife.  <u>Id.</u>

In response to the call, an officer from the St. Cloud Police Department -- Jennifer Hilgers ("Hilgers") -- arrived on the scene. Following Hilgers' arrival, the Plaintiff claims that:

> [He] voluntarily came out of his home to speak
> with her.  He admitted that he was arguing
> with his brothers.  He allowed her to pat him
> down in a search for weapons.  She found none.
> Officer Hilgers then asked him about the knife
> and [the] Plaintiff told her no one had a
> knife.   He further explained that he had
> thrown a fuzz buster at one of his brothers.
> Officer Hilgers confirmed this by finding a
> broken fuzz buster on the lawn.
>
> Officer Hilgers had been at [the] Plaintiff's
> residence for several minutes and had the
> situation under control when Officer Schlieman
> arrived on the scene.  Although he had already

- 2 -

> been searched by Officer Hilgers, Plaintiff
> allowed Officer Schlieman also to pat him down
> for weapons.  [The] Plaintiff had no weapon.
>
> After a brief discussion between Officer
> Schlieman and Plaintiff, Officer Schlieman
> told Plaintiff that he was going to handcuff
> [the] Plaintiff and put [the] Plaintiff in his
> squad car. * * * In the course of handcuffing
> [the] Plaintiff, Officer Schlieman broke the
> Plaintiff's arm.

Id. at 2-3.

The Plaintiff contends that Officer Schlieman ("Schlieman") felt

that he had a right to restrain the Plaintiff, because the Plain-

tiff was agitated and would not stand still.  Id. at 3.

In contrast, the Defendants contend that the Plaintiff refused

to submit to official authority, and rejected the police officers'

attempts to control the circumstances.  It is not in dispute that,

in attempting to subdue the Plaintiff, and to secure his hands

behind his back with cuffs, the Plaintiff attempted to pull back

his arms, and a break in one arm occurred.  As related by the

Plaintiff, as a result of his physical injury, he sustained no

permanent disability, will incur no future medical expense, has not

sustained a loss of earnings capacity, but his injury did require

medical treatment.  The Plaintiff was not arrested, after this

altercation.  Given these facts, the Defendants contend that the

Plaintiff's case was groundless, since he admittedly resisted

Schlieman's efforts to restrain him.  See, <u>Defendants' Response</u>, at 5.

On October 25, 1999, a Settlement Conference was conducted by this Court.  On that same day, the Defendants tendered an Offer of Judgment, pursuant to Rule 68, Federal Rules of Civil Procedure, in the amount of $8,600.00, inclusive of attorneys' fees and costs. The case did not settle on October 25, and the Defendants subsequently, on November 8, 1999, tendered a further Offer of Judgment in the amount of $3,000.00, exclusive of attorneys' fees and costs, which the Plaintiff accepted on November 15, 1999.  Pursuant to an Order of the District Court, the Honorable Richard H. Kyle presiding, the Plaintiff was permitted to petition the Court for an award of attorney's fees and costs, under Title 42 U.S.C. §1988, as if he were a prevailing party.[1]  As noted, the parties agreed that the issue of the Plaintiff's entitlement to an award of attorney's fees, and costs, would be reserved for determination by the Court

_____

[1]The Plaintiff contends that the District Court's Order qualifies him as a "prevailing party" for attorney's fees and costs purposes.  We reject that contention as belied by the express terms of the parties' Stipulation, and of the District Court's Order which effectively "deemed" the Plaintiff as a "prevailing party" in order that he could petition for attorney's fees.  Had the parties intended to stipulate to the Plaintiff's entitlement to "prevailing party" status, they were at liberty to do so, but they did not.  We will not rewrite their Stipulation so as to afford rights the parties did not contemplate.

and, by Order dated December 16, 1999, the issue was referred to
this Court for a Report and Recommendation.

### III.   Discussion

The Defendants oppose the Plaintiff's Motion for attorney's
fees and costs, and argue that the Plaintiff is not the "prevailing
party," as that terminology is employed in Title 42 U.S.C. §1988,[2]
and that, even if the Plaintiff were found to be a prevailing par-
ty, his request for fees and costs is unreasonable, if not exor-
bitant.  We address each of the Defendants' arguments, in turn.

A.   Prevailing Party Status.  As our Court of Appeals has
explained, in Tyler v. Corner Construction Corporation, Inc., 167
F.3d 1202, 1204-1205 (8th Cir. 1999):

> [I]n determining what fees, if any, to award
> to a plaintiff in a civil rights action, a
> district court must first decide whether the
> plaintiff is a "prevailing party," that is,
> whether he or she achieved through litigation
> some of the benefit originally sought in
> bringing suit.  See, Hensley v. Eckerhart, 461
> U.S. 424, 433 (1983).  If the court answers
> this question in the affirmative, it should
> then determine what attorney's fees are rea-
> sonable under the circumstances.  The proper
> amount of attorney's fees depends in part on

---

[2]In pertinent part, Section 1988 provides as follows:

> In any action or proceeding to enforce a
> provision of [Section] 1983 * * *, the court,
> in its discretion, may allow the prevailing
> party, other than the United States, a reason-
> able attorney's fee as part of the costs.

> the extent of the plaintiff's success, id. at
> 438-40; where the plaintiff obtains only
> "limited" relief, the court may award only
> limited fees.  Id. at 440; see also id. at
> 438-39 n. 14.

The mere fact that the Plaintiff chooses to settle his action does
not, necessarily, deprive him of "prevailing party" status under
Section 1988.  See, Maher v. Gagne, 448 U.S. 122, 129 (1980)("The
fact that respondent prevailed through a settlement rather than
through litigation does not weaken her claim to fees.").  As the
Supreme Court explained, in Farrar v. Hobby, 506 U.S. 103, 111
(1992):

> Therefore, to qualify as a prevailing party, a
> civil rights plaintiff must obtain at least
> some relief on the merits of his claim.  The
> Plaintiff must obtain an enforceable judgment
> against the defendant from whom fees are
> sought, [citation omitted] or comparable re-
> lief through a consent decree or settlement,
> Maher v. Gagne, 448 U.S. 122, 129 (1980).
> Whatever relief the plaintiff secures must
> directly benefit him at the time of the judg-
> ment or settlement.

In addition, in Farrar, the Supreme Court held that "a plaintiff
'prevails' when actual relief on the merits of his claim materially
alters the legal relationship between the parties by modifying the
defendant's behavior in a way that directly benefits the plain-
tiff."  Tyler v. Corner Construction Corporation, Inc., supra at
1204, quoting Farrar v. Hobby, supra at 111-112.  The relief may
take the form of an enforceable Judgment, a Consent Decree, or a

- 6 -

settlement.  <u>Id.</u>, citing <u>Farrar v. Hobby</u>, supra at 111; see also <u>Maher v. Gagne</u>, supra at 129.[3]

Further, as the Court explained in <u>Tyler v. Corner Construction Corporation, Inc.</u>, supra at 1205:

> The term "prevailing party" is generously defined, the Court said in <u>Farrar</u>, 506 U.S. at 109, and does not turn on the magnitude of the plaintiff's success, <u>Id.</u> at 114.  The plaintiffs in <u>Farrar</u>, <u>Id.</u> at 107, 113, who had sued for $17 million in compensatory damages from six defendants and were awarded only one dollar from one defendant, were nevertheless prevailing parties because the judgment forced that defendant to pay money that he would not otherwise have paid.  Under <u>Farrar</u>, [the Plaintiff] is thus a prevailing party in his suit against the defendants because he has obtained relief in the form of a settlement that gives him a legal claim against them for $17,500.

Notwithstanding the Defendants' arguments to the contrary, <u>Tyler</u> makes plain that a monetary recovery, via settlement or otherwise, qualifies a party as a "prevailing party," so that the successful litigant may seek an award of attorney's fees, unless the settlement was solely for "nuisance" purposes.

---

[3]In <u>Peter v. Jax</u>, 187 F.3d 829, 833 (8th Cir. 1999), the Court reiterated its recognition, in <u>Tyler v. Corner Construction Corp.</u>, 167 F.3d 1202, 1205 (8th Cir. 1999), that, notwithstanding some prior confusion in the Court's cases, "courts shold apply 'principles outlined in Farrar to determine prevailing-party status in cases that result in settlement,'" quoting <u>Tyler</u>, and not the alternative approach provided by the "catalyst theory."  Accordingly, our analysis is governed by <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992).

As such, the fact that the Plaintiff's recovery was relatively small, when compared to his ad damnum, has no impact on our analysis of his "prevailing party" status. Here, the Plaintiff recovered $3,000.00 and, therefore, he is a "prevailing party". Therefore, we turn to the question of whether, as the Defendants contend, this case was settled for its nuisance value, which would warrant a denial of an award of fees and costs, notwithstanding the Plaintiff's standing as a prevailing party.

Although several Courts have stated, in passing, that something characterized as a "nuisance settlement," in a Section 1988 setting, does not warrant an award of fees, see, e.g., Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 792 (1989), and Chicano Police Officer's Association v. Stover, 624 F.2d 127, 131 (10th Cir., 1980), see also Farrar, 506 U.S. at 122 (O'Connor, J., concurring), our Court of Appeals has only recently addressed that issue. In Tyler v. Corner Construction Corporation, Inc., supra at 1206, the Court dealt with this issue as follows:

> A defendant's decision on whether to accept a settlement offer always involves an economic calculation of some sort; that is, a rational defendant will ask whether the offer is less than the anticipated cost of defense, including the risk of a recovery by the plaintiff. Assuming that a proffered settlement does not include an admission of liability, a defendant will almost always accept the offer if it is

- 8 -

less than the cost of defense. (There are
exceptions:  A grudge match is among them and
a desire not to create a market in complaints
will create another.)

But a so-called nuisance settlement, we think,
is not just one that is entered into after the
usual economic calculation:  It is one that is
accepted despite the fact that the case
against the defendant is frivolous or ground-
less, solely in an effort to avoid the expense
of litigation.  See <u>Fisher v. Kelly</u>, 105 F.3d
350, 353 (7th Cir.1997), and <u>Ashley v. Atlan-
tic Richfield Co.</u>, 794 F.2d 128, 134-35 n. 9
(3d Cir.1986).

In <u>Tyler</u>, the Court went on to note that, while a prevailing party

is ordinarily entitled to attorney's fees of some sort, it is

nevertheless true that there are "special circumstances" that can

"render such an award unjust," and that, a nuisance settlement, as

the Court there defined that term, represents such a special cir-

cumstance.   <u>Id.</u>, citing <u>Newman v. Piggie Park Enterprises, Inc.</u>,

390 U.S. 400, 402 (1968).

Here, the Plaintiff sought recovery under four theories of

liability, including assault, battery, negligence, and claimed

civil rights violations.  However, as underscored by the Defendant,

"[t]he evidence gathered during discovery demonstrates that [the]

Plaintiff knew his case was groundless and nothing is more telling

in this regard than his own admission that he knew he had an

obligation not to resist the officers, that he had been in a fight

with his brother, and that he did indeed resist the efforts of the

- 9 -

officers to attempt to contain him while they finished their tasks." See, Defendants' Response, at 5.

In our considered view, the Defendants somewhat mischaracterize the Plaintiff's deposition testimony. See, Marshall Aff.; Ex. D. Our review of that testimony confirms that the Plaintiff admitted that he did not willingly submit to having his arm placed behind his back. Id. However, he claimed that his resistence was verbal, and inappreciable. Given the Plaintiff's allegation that Schlieman unnecessarily overreacted, and asserted a physical force upon the Plaintiff's injured arm that exceeded what was reasonably required, we cannot say that the Plaintiff's claim was frivolous or groundless.

More importantly, in contrast to the Defendants' assertion, we are not obligated to finitely weigh the merits of the Plaintiff's Complaint, since we need do no more than to satisfy ourselves that, on an objective basis, the Plaintiff's action was not legally frivolous, unreasonable, or groundless. See, United Handicapped Federation v. Andre, 622 F.2d 342, 347 (8th Cir. 1980)(it is neither "necessary or practical for the plaintiffs to prove that their rights were in fact violated under traditional standards of analysis."). To require a more exacting assessment of the Plaintiff's claim would subvert the efficiencies of a settlement, by requiring a "second major litigation" in order to appraise the strength of

the Plaintiff's action.  See, <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983)(a "request for attorney's fees should not result in a second major litigation."); cf., <u>DeGidio v. Pung</u>, 920 F.2d 525, 529 n. 7 (8th Cir. 1990).

Consequently, based upon the Record before us, we conclude that the Plaintiff's causes of action were of sufficient strength, legally, to properly quell any notion that they were frivolous, or vexatious.[4]  As the Plaintiff has emphasized, this was not an action premised upon a bruised ego, righteous indignation, or momentary embarrassment -- his arm was broken -- and, at least in his view, without provocation or appreciable resistance on his part.  We do not overlook the fact that the case settled for a nominal amount, thereby avoiding an adjudication of the merits of the parties respective claims and defenses, but, having facilitated that settlement, and viewing the totality of the evidence objec-

_____

[4]As to the strength of the Plaintiff's claim, as we have noted, the issue is not whether the Plaintiff's action would have withstood a Motion to Dismiss, but whether the claim was without any arguable factual or legal basis.  Cf., <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989)(legal standard for "frivolousness" under Title 28 U.S.C. §1915); <u>Ross v. Social Security Administration</u>, 949 F.2d 1021, 1022 (8th Cir. 1991)(same); <u>Williams v. White</u>, 897 F.2d 942, 944 n. 1 (8th Cir. 1990)(same); <u>Professional Real Estate Investors v. Columbia Pictures</u>, 508 U.S. 49, 59 (1993)(defining "sham" lawsuit as one that is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits").  Here, the Plaintiff's Complaint adequately clears that minimal threshold of a permissible claim.

- 11 -

tively, we cannot say that the Plaintiff's claims were fatally flawed, or plainly without legal merit.[5]

Therefore, we conclude that the Plaintiff was a prevailing party, under Section 1988, as he was able to secure "actual relief on the merits of his claim [which] materially alter[ed] the legal relationship between the parties by modifying the defendant[s'] behavior in a way that directly benefit[ted] the plaintiff," and the settlement involved colorably meritorious claims. Farrar v. Hobby, supra at 573. Therefore, our analysis proceeds to the Defendants' argument that the Plaintiff's fee request is overly inflated.

B. The Exorbitance of the Plaintiff's Request. To determine a reasonable attorney's fee, a Court must compute a lodestar figure by multiplying the hours, that a plaintiff's counsel should have reasonably spent on the litigation, by a reasonable hourly fee.

_____

[5]While not a dispositive factor in our analysis, we do not overlook the fact that the Defendants had not sought any summary disposition of the Plaintiff's claim. We recognize that the Plaintiff's claims are fact-intensive, and that the parties' varying versions of the operative facts would render a summary disposition unlikely, but the absence of such irremediably flawed claims is consistent with our finding that the Plaintiff's claim had adequate merit so as to counsel a settlement in order to stave a potentially untoward result. Considering the facts at issue in their entirety, neither we, nor the Defendants, are able to state, with anything approaching conviction, that the Plaintiff could not prevail at Trial or, if he did, the Court would be obligated to enter Judgment, in the Defendants' favor, as a matter of law.

See, Jane.L. v. Bangerter, 61 F.3d 1505, 1509 (10th Cir. 1995)  The "lodestar" figure is then subjected to an upward or downward adjustment, as appropriate.  Glover v. Heart of America Management Co., No. CIV.A. 98-2125, 1999 WL 450895 at *1 (D. Kan. May 5, 1999).  The fee applicant bears the burden of establishing an entitlement to the award of fees and costs, and of documenting the appropriate hours expended and hourly rates.  See, Case v. Unified School Dist. No. 233, Johnson County, Kan., 157 F.3d 1243, 1249-59 (10th Cir. 1998).

Here, the Plaintiff's legal counsel have requested attorneys' fees, for their efforts in this case on their client's behalf, in the total amount of $27,735.65.  See, Affidavit of George E. Atrim, Ex. A.  Notably, they suggest that their request is reasonable, considering the fact that the Plaintiff's claim was amicably resolved within a period of seventeen months after its inception.  As stated by the Plaintiff's counsel, a substantial amount of legal work was expended in order to support the Plaintiff's position, as "[c]apable defense counsel made voluminous Rule 26 disclosures, utilized several written discovery devices, made motions, retained in-state and out-of-state experts, and took depositions."  Atrim Aff., at ¶ 12.

Our analysis starts with the Defendants' contention that, since the Plaintiff was not wholly successful in this litigation,

his fee request should be reduced accordingly.  In response, the Plaintiff asserts that, although he was only able to secure a relatively modest financial recovery, that recovery did serve to protect his constitutional rights and warranted, to that extent, the pursuit of his claim.  See, Plaintiff's Memorandum in Support of Motion for an Award of Costs and Attorney's Fees, at 7.  We agree with that general observation, and we further appreciate that the dollar recovery is generally consonant with the absence of any permanent disability, any loss of earnings or earnings capacity reflection, and any reasonable expectation of future medical expense.  Given the legal limitations on the Plaintiff's prospective damages, the settlement amount is small, but not without correlation to what might well have been a reasonable assessment of damages, if liability would have been established at Trial.  As a consequence, we will be mindful of the minimal nature of the settlement amount, but we do not believe that this case presents an occasion to facilely reduce the attorneys' fees, by some discretionary percentage, so as to correlate with the modest settlement recovery.

We are persuaded, however, that the tabulation of counsel's recoverable hours of work is both excessive, and starkly wanting in specificity.  As noted by the Defendant, in Hensley v. Eckerhart, supra at 434, the Supreme Court stated:

- 14 -

> Counsel for the prevailing party should make a
> good-faith effort to exclude from a fee re-
> quest hours that are excessive, redundant, or
> otherwise unnecessary, just as a lawyer in
> private practice ethically is obligated to
> exclude such hours from his fee submission.
> In the private sector, "billing judgment" is
> an important component in fee setting.  It is
> no less important here.

Where time entries in a fee petition do not describe, with preci-

sion, the work that was performed, they may be eliminated or sub-

stantially reduced.  See, H.J. Inc. v. Flygt Corp., 925 F.2d 257,

260 (8th Cir. 1991); Baufield v. Safelite Glass Corp, 831 F. Supp.

713, 721 (D. Minn. 1993).  Here, our analysis of counsel's time

entries is triply vexed by "block billing," by his practice to bill

his time in fifteen-minute increments, and by the staggered ap-

proach that counsel employed in completing discreet legal tasks.

Block billing, in which different categories of work are com-

mingled in a single time entry, and without a specification as to

the amount of time expended on each legal task, substantially im-

pairs the Court's capacity to divine whether the specific work,

which was consuming counsel's time, was appropriate for the time

claimed.  See, Miller v. Woodharbor Molding Millworks Inc., 174

F.3d 948, 949-50 (8th Cir. 1999)(criticizing counsel's failure to

"consistently identify the subject matter of the work performed"

and "to specify the substance or content of" the billed tasks);

McDannel v. Apfel, 78 F. Supp.2d 944, 947-48 (S.D. Ia. 1999)(same).

- 15 -

As but one example, repeatedly, counsel has entered his time as involving "legal research," but without the slightest suggestion of the nature of the issues being researched.

In addition, counsel registers his time in fifteen-minute units, so that whatever time is expended, which is less than fifteen minutes in duration, will be recorded as involving fifteen minutes. While we do not regulate the billing practices of the law firms that appear before us, those practices do "not require the Court to pay a full quarter hour's worth of fees for a task which should only have taken seconds." Bowman v. Sect'y of HHS, 744 F. Supp. 898, 901 n. 1 (E.D. Ark. 1989). Since counsel's time is recorded on a daily basis, we are unable to discern whether the accumulated time for telephone calls, for example, reflects a fifteen minute exchange, or a one-minute chat.

Perhaps most inscrutable, however, is counsel's distended approach to the completion of legal tasks. For example, counsel opened his file in this matter on February 12, 1997, and spent the ensuing year and four months in reviewing correspondence, in legal research and in drafting a Complaint. All totaled, 22.25 hours were expended, from February 12, 1997, until June 22, 1998, when the Plaintiff's Complaint was filed with the Court. Notably, the Complaint was five pages in length, and of a generic kind for a case involving a Section 1983 claim, with related State law

- 16 -

actions.  Although Rule 11, Federal Rules of Civil Procedure, imposes a due diligence standard on those who would draft and file a Federal Complaint, given the abundance of time counsel has recorded for this purpose, we are compelled to conclude that, as one month passed into another, counsel was obliged to replicate prior legal work as his attention was redrawn to drafting a Complaint over a period of sixteen months.

Unfortunately, this distended approach toward counsel's performance of legal tasks was not limited to the drafting of the Plaintiff's Complaint.  As best as we can determine, counsel expended thirteen hours, over the months from June to September of 1998, largely in drafting the Plaintiff's written discovery requests.  Counsel prepared responses to the Defendants' written discovery, during the period from October 12 through December 31, 1998, which consumed a total of seven hours.  Other segments of time are not readily cataloged into discreet tasks, principally because the references are rife with entries for "legal research," the topics of which are not disclosed.

All totaled, by our computation, counsel claims 136 hours in preparing this case through November 8, 1999, which approximates with the time that his client accepted the Defendants' second Offer of Judgment.  The Plaintiff's claims are legally and factually uncomplicated, only a total of three depositions were taken by all

of the parties, and only one Motion required briefing and argument
to the Court.   Having closely reviewed the file, and being fully
advised in the work required in preparing such matters for Trial,
we conclude that preparing this case for Trial, inclusive of draft-
ing the Complaint;[6] drafting discovery requests and responding to
the Defendants' discovery demands; preparing for, and taking, three
depositions; preparing experts and expert reports; attending one
Court-ordered Settlement Conference; responding to one straightfor-
ward nondispositive Motion; and communicating with the client and
defense counsel; would reasonably have required an expenditure of
no more than 70 hours.[7]  Such an allowance would abundantly allow
for thorough legal research and preparation, and would afford an
ample opportunity to professionally advance the Plaintiff's legal
interests.

---

[6]The Complaint was amended, on September 16, 1998, but the
amendment was consensual, and merely named Schlieman as a party-
Defendant.

[7]We find this allowance of time to also be commensurate with
the modest settlement that was obtained by counsel's legal efforts.
We would have preferred to have particularized our objections to
counsel's time entries, but the deficiencies were recurrent, were
generic in nature, and effectively defied an individualized ap-
proach.   While we recognize that our allowance of 70 hours of
counsel time would appear to be greater than that contemplated by
the Defendants' first Offer of Judgment, we are not persuaded that
the Defendants' first offer appropriately valued the Defendants'
potential exposure to the Plaintiff's claim for attorneys' fees.

- 18 -

Lastly, we consider the Plaintiff's requested hourly fee.   In determining the reasonableness of a Plaintiff's hourly fee, a Court is to look to the ordinary fee for similar work in the community. See, <u>Avalon Cinema Corp v. Thompson</u>, 689 F.2d 137, 140 (8th Cir. 1982).   Plaintiff requests an hourly fee of $175.00 for his legal work before January of 1999, and an hourly fee of $195.00 there-after.   See, <u>Atrim Aff.</u>, at ¶ 15.   We find this fee request to be substantially above the normal rate, in the Sixth Division of this District, for work of like kind, and quality.   While we do not doubt that, on occasion, an attorney in the Sixth Division could bill his time at the rates requested by Plaintiff's counsel, we are satisfied that any such rate would not be related to a Section 1983 claim.   In this respect, the Court plays a unique role, for we can accept that, in individualized cases, a client would be willing to compensate his own attorney above the rate normally charged by that attorney's legal peers, but the client is at liberty to do so when the client has a special relationship with legal counsel or, for other reason, elects to pay his counsel a premium rate.   We have no such luxury, and we conclude that, in awarding counsel an hourly rate of $150.00 for this type of legal work, we are compensating his time at the upper end of the fee spectrum in the Sixth Division.

As a result, multiplying the 70 hours of legal work we allow, by the $150.00 hourly rate, that we find appropriate under the circumstances, produces a reasonable fee award of $10,500.00.  To this amount, we add $335.00 in reimbursable costs,[8] which produces a total award of $10,835.00.

WHEREUPON, It is --

---

[8]The Plaintiff has requested an award of costs in the amount of $2060.65.  In this request, however, the Plaintiff includes what are, in effect, his attorneys' costs in doing business, inclusive of copying charges, postage, and telephone charges.  We find no authority that allows these ordinary doing-business expenses to be taxed under Title 28 U.S.C. §1920.  See, Sphere Drake Insurance PLC v. Trisko, 66 F. Supp.2d 1088, 1093-94 (D. Minn. 1999)(disallowing duplication expenses for documents other than Trial exhibits); citing Emmenegger v. Bull Moose Tube Co., 33 F. Supp.2d 1127, 1133 (E.D. Mo. 1998).

In addition, the Plaintiff requests reimbursement for computer-assisted legal research, which is not taxable, as "computer-based legal research must be factored into the attorney's hourly rate, hence the cost of computer time may not be added to the fee award."  Strandley v. Chilhowee R-IV School District, 5 F.3d 319, 325 (8th Cir. 1993), citing Leftwich v. Harris-Stowe State College, 702 F.2d 686, 695 (8th Cir. 1983).

Lastly, we disallow the Plaintiff request for an award of certain expert consultation fees, as these are not taxable except to the extent of a $40.00 per day attendance fee for the time the expert expends in testifying at Trial, as well as the costs of deposition transcripts which were not read into the Record, received as evidence, or used for other than investigatory purposes.  See, Sphere Drake Insurance PLC v. Trisko, supra at 1091-1093; Koppinger v. Cullen-Schiltz & Assoc., 513 F.2d 901, 911 (8th Cir. 1975).

As a result, we tax the fees Plaintiff paid to the Clerk, and to a proxy agent for the service of process.  See, Title 28 U.S.C. §1920(1).

RECOMMENDED:

1.    That the Plaintiff's Motion for an Award of Costs and Attorney's Fees [Docket No. 25] be GRANTED.

2.    That the Defendants are directed to pay fees and costs to the Plaintiff in the total amount of $10,835.00.

_____
Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

## N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 12, 2000**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 12, 2000,** unless all interested parties stipulate

that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.